## IN THE UNITED STATES DISTRICT COURT
## FOR DISTRICT OF PUERTO RICO

| | |
|---|---|
| **PEDRO ROSARIO MEDINA** | |
| **Plaintiff,** | **CIVIL ACTION NO.** |
| **v.** | |
| **LOOMIS PUERTO RICO INC.; LOOMIS ARMORED US LLC; ABC CORPORATION; XYZ CORPORATION** | **AGE DISCRIMINATION ACT (ADEA); AMERICAN WITH DISABILITIES ACT (ADA); TITLE VII OF THE CIVILS RIGHT ACT OF 1964; PR ACT NO. 100 OF JUNE 30, 1959; PR ACT NO. 80 OF MAY 30, 1976TRIAL BY JURY DEMANDED** |
| **Defendants,** | |

## COMPLAINT

TO THE HONORABLE COURT:

COMES NOW Plaintiff, Pedro Rosario Medina ("Rosario"), represented by his undersigned counsel and very respectfully alleges, states and prays:

## I.    INTRODUCTION

1.1    This is a Complaint seeking monetary damages against defendants for employment practices that violated the American with Disabilities Act of 1990, 42 U.S.C. § 12101 ("ADA"), the Federal Age Discrimination in Employment Act of 1967 as amended, 29 U.S.C. § 621 *et seq*. ("ADEA"), Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et. seq.* ("Title VII"), Puerto Rico's Act No. 100 of June 30, 1959, as amended, 29 L.P.R.A. § 146, *et seq*. ("Act 100"), Puerto Rico's Act No. 80 of May 30, 1976, as amended, 29 L.P.R.A. § 185, *et seq.* ("Act 80"), to remedy acts of employment discrimination and discharge without cause, in its modality of constructive discharge, perpetrated against Rosario by Loomis Puerto Rico, Inc. ("Loomis PR") and Loomis Armored US LLC ("Loomis US") (Loomis PR and Loomis US, collectively, "Loomis").

1.2    Rosario was subject to discriminatory and hostile work environment, being constantly disrespected, ridiculed, embarrassed and attacked by Loomis, through its officials, motivated by his age, medical condition, race, origin and color of skin. The hostile and discriminatory work environment created by Loomis left Rosario with no other rational alternative than to resign from Loomis. Loomis' acts have caused Rosario serious and ongoing physical and mental damages, altering his lifestyle and well-being.

## II.    NATURE OF THE ACTION AND JURISDICTION

2.1    This action is brought pursuant to the ADA, ADEA, and Title VII seeking compensatory and liquidated damages, back pay, hostile work environment and constructive discharge as a result of Loomis' discriminatory practices against Rosario because of his age, medical condition, race, origin and color of skin. Rosario also seeks relief under Act 100, for all damages caused as a result of defendant's discrimination based on age, race, origin and color of skin. Rosario seeks relief for his discharge without cause, in its modality of constructive discharge, requesting the statutory separation payment owed to him pursuant to Act 80, Puerto Rico's Statutory Separation statute. Finally, Rosario well as attorneys' fees and litigation costs pursuant to ADA, ADEA, and Title VII.

2.2    This court has jurisdiction to entertain this action pursuant to Section 7 of the ADEA, 29 U.S.C. § 626(c)(1), Section 706(f)(3) of Title VII, 42 U.S. Code § 2000e–5(f)(3) and under 28 U.S.C. §§ 1331 and 1343(a)(4). Plaintiff also invokes this Court's supplemental jurisdiction pursuant to 28 U.S.C. §1367 to hear the Commonwealth law claims because these arose from the same nucleus of operative facts as the claims under ADA, ADEA and Title VII.

2.3    Venue is proper in this district pursuant to 28 U.S.C. § 1391 (b)(1) and (2), as Loomis PR, employer of Rosario resides in Puerto Rico and some of the discriminatory

employment practices were committed within the judicial district comprising the Commonwealth of Puerto Rico.

2.4    A timely charge of employment discrimination based on age discrimination was filed with the Equal the Equal Employment Opportunity Commission (the "EEOC"), charge number 515-2019-00067. A notice of right to sue from the EEOC was issued on August 30, 2019, and received on September 3, 2019 (**Exhibit 1**) (the "Right to Sue").

2.5    This Complaint is being filed within 90 days of receipt of the of the Right to Sue.

### III.    THE PARTIES

3.1    Plaintiff, Rosario is a citizen of the United States, resident of Saint Johns, Florida, and is 50 years of age.

3.2    At all relevant times, Rosario was an employee under the provisions of Title VII, 42 U.S.C. § 2000e (f).

3.3    At all relevant times, Rosario was an employee under the provision of ADA, 42 U.S.C. § 12111 (4), an a qualified individual pursuant to 42 U.S.C. § 12111 (8).

3.4    At all relevant times, Rosario was an employee under the provisions of ADEA, 29 U.S.C. § 630 (f), and is within the protected class under ADEA, 29 U.S.C. § 631(a).

3.5    Rosario was an employee under all the federal and local statutes upon which he bases his request for relief.

3.6    Rosario was an employee of Loomis for around nine (9) years. He began working for Loomis on January 2003 until February 2004, and then again or about June 14, 2010, as General Manager of Puerto Rico. Rosario was later appointed as Vice President and Area Manager for Puerto Rico and the U.S. Virgin Islands. He was constructively discharged from his position as Loomis' Vice President and Area Manager for Tampa, Puerto Rico and the U.S. Virgin Islands on

March 30, 2018, after being subject of harassment, discriminatory and hostile work environment, being constantly disrespected, ridiculed, embarrassed and attacked by Loomis.

3.7    Co-Defendant, Loomis PR, is, and at all times hereinafter mentioned was, a corporation duly created under the laws of Tennessee, but with its principal place of business in the Commonwealth of Puerto Rico.

3.8    Loomis PR is a for profit corporation registered with the Commonwealth of Puerto Rico Department of State.

3.9    Loomis PR, at all relevant times, was Rosario's employer as defined by the federal and local laws invoked in this action.

3.10    Loomis PR is an "employer" under ADA, 42 U.S.C. § 12111 (5).

3.11    Loomis PR is a "covered entity" under ADA, 42 U.S.C. § 12111 (2).

3.12    Loomis PR is a "person" within the meaning of ADA, 42 U.S.C. § 12111 (7).

3.13    Loomis PR is an "employer" under ADEA, 29 U.S.C. § 630(b).

3.14    Loomis PR is a "person" within the meaning of ADEA, 29 U.S.C. § 630(a).

3.15    Loomis PR is engaged in an "industry affecting commerce" within the meaning of 29 U.S.C. § 630(h).

3.16    Loomis PR is an "employer" under Title VII, 42 U.S.C. § 2000e(b).

3.17    Loomis PR is a "person" under Title VII, 42 U.S.C. § 2000e(a).

3.18    Loomis PR is engaged in an "industry affecting commerce" within the meaning of 42 U.S.C. § 2000e(h).

3.19    Loomis PR employs more than twenty-five (25) employees on a daily basis as the term is defined in 42 U.S.C. § 12111 (5).

3.20    Loomis PR employs more than twenty (20) employees on a daily basis as the term is defined in 29 U.S.C. § 630(b).

3.21    Loomis PR employs more than fifteen (15) employees on a daily basis as the term is defined in 42 U.S.C. § 2000e(b).

3.22    Loomis PR is an "employer" under Act 100.

3.23    Loomis PR is an "employer" under Act 80.

3.24    Co-Defendant, Loomis US, is, and at all times hereinafter mentioned was, a corporation duly created under the laws of, and with its principal place of business in, the state of Texas.

3.25    Loomis US, at all relevant times, was Rosario's employer as defined by the federal and local laws invoked in this action.

3.26    Loomis US is an "employer" under ADA, 42 U.S.C. § 12111 (5).

3.27    Loomis US is a "covered entity" under ADA, 42 U.S.C. § 12111 (2).

3.28    Loomis US is a "person" within the meaning of ADA, 42 U.S.C. § 12111 (7).

3.29    Loomis US is an "employer" under ADEA, 29 U.S.C. § 630(b).

3.30    Loomis US is a "person" within the meaning of ADEA, 29 U.S.C. § 630(a).

3.31    Loomis US is engaged in an "industry affecting commerce" within the meaning of 29 U.S.C. § 630(h).

3.32    Loomis US is an "employer" under Title VII, 42 U.S.C. § 2000e(b).

3.33    Loomis US is a "person" under Title VII, 42 U.S.C. § 2000e(a).

3.34    Loomis US is engaged in an "industry affecting commerce" within the meaning of 42 U.S.C. § 2000e(h).

3.35    Loomis US employs more than twenty-five (25) employees on a daily basis as the term is defined in 42 U.S.C. § 12111 (5).

3.36    Loomis US employs more than twenty (20) employees on a daily basis as the term is defined in 29 U.S.C. § 630(b).

3.37    Loomis US employs more than fifteen (15) employees on a daily basis as the term is defined in 42 U.S.C. § 2000e(b).

3.38    Loomis US is an "employer" under Act 100.

3.39    Loomis US is an "employer" under Act 80.

3.40    ABC Corporation is a corporate entity which name is unknown at this time for plaintiff, which is the real name and/or the real party in interest as employer for Rosario and/or is the parent corporation of Loomis and/or responsible party and is liable for the actions and/or omissions of Loomis' personnel.

3.41    XYZ Insurance Corporation is an insurance company duly authorized to do business and/or assume risks that has issued an insurance policy covering the risks involved in this claim, which name is not known by Rosario at this time.

3.42    All co-defendants may be collectively referred to as "Defendants".

### IV.    FACTS COMMON TO ALL CAUSES OF ACTION

4.1    Rosario repeats and realleges each and every preceding allegation as if fully set herein.

4.2    Rosario was born on July 7, 1969.  At the time of the filing of the Complaint, he is 50 years old.

4.3    Rosario has been working in the cash handling and security industry for over fifteen (15) years.

6

4.4     Rosario began working with Loomis on January 2003 until February 2004, and then again on June 14, 2010, as General Manager of Puerto Rico, working from Loomis' offices in Puerto Rico and becoming an employee of Puerto Rico, protected by the laws and regulations of Puerto Rico.

4.5     Rosario was later appointed Vice President and Area Manager for Puerto Rico and the U.S. Virgin Islands.

4.6     Rosario's direct supervisor, since on or around January 2015 and until his constructive discharge, was Magdiel Mckercher ("Mckercher"), who was at all times relevant to this complaint, District Vice President.

4.7     On February 9, 2017, after the resignation of Tampa's branch manager, Mr. Rosario was appointed to take-over said branch, being promoted to Loomis' Vice President and Area Manager for Tampa, Puerto Rico and the U.S. Virgin Islands.

4.8     Rosario began working temporarily from Tampa, constantly travelling there from Puerto Rico, but later he and his family had to permanently move to Tampa in order to continue his career with Loomis, at the request of Loomis.

4.9     As a Loomis' Vice President and Area Manager for Tampa, Puerto Rico and the U.S. Virgin Islands, Rosario's functions included working with operations managers, department managers, human resources manager and financial manager to provide administrative support to front line supervisors and front line service personnel, focusing mainly in managing complex and large-scale financial document management, over $19 million annually, of multi-locations operations.

4.10     Rosario's performance during his tenure at Loomis was unparalleled, being one of the most awarded employees.

4.11    Mr. Rosario received the Global and US Loomis' League award for the 6th Most Improved Branch. In 2014, Mr. Rosario was a CEO Award Recipient for Excellence Performance, after just four (4) years of work with Loomis. In 2017, he received the Loomis US League award for the Most Improved Branch for his performance with the Tampa Branch

4.12    Rosario was not given any disciplinary action, corrective plan or negative performance review during his time at Loomis.

4.13    On December 16, 2016, Mr. Rosario had open-heart surgery at the *Centro Cardiovascular de Puerto Rico y del Caribe* because he had hypertrophic cardiomyopathy and needed aortic and mitral valves replacement, as well as an artery bypass.

4.14    Sometime after Rosario's open-heart surgery, Mckercher and Loomis started to create a hostile work environment for Rosario.

4.15    Before permanently moving to Tampa to work for Loomis, as requested by Loomis, Rosario started to feel the hostile work environment created by Loomis and Mckercher.

4.16    At that moment, Rosario requested Loomis and Mckercher to transfer him back to Puerto Rico, but Loomis and Mckercher denied said request.

4.17    Mckercher made a discriminatory and derogatory remarks when he said "you are from an island" when disrespectfully referring to Rosario's work style.

4.18    Mckercher also said discriminatory and hateful comments against the recently appointed CEO of Loomis in the United States, Aritz Larea ("Larea"). In a conference call with several branch managers including Rosario, Mckercher openly opposed the appointment of Mr. Larea because he was a Spaniard and knew nothing of the market of the United States.

4.19    Mckercher also questioned Loomis leadership, including its Board of Directors and its global CEO, Patrik Andersson, for its decision to appoint Larea as the CEO of Loomis in the United States. These comments offended Mr. Rosario, who is Hispanic.

4.20    After the discriminatory remarks and the Rosario's open-heart surgery, Mckercher radically altered Rosario's working schedule.

4.21    Mckercher required Rosario to report to him every hour at night to notify him the status of the trucks returning to Loomis, many of them returning at 11:00pm. This meant that Rosario's usual work-day of 8:00am to 6:00pm, or nine (9) hours per day, was increased to 9:00am to 11:00pm, an increase of three (3) to four (4) hours per day.

4.22    Mckercher continuously threatened Rosario telling him that he had ninety (90) days to "fix" the Tampa Branch or he would be put on a performance improvement plan. Rosario's record performance at that time was impeccable and the Tampa Branch won the number three (3) Improvement Branch in the United States in 2017.

4.23    Mckercher then started sabotaging Rosario's performance by withholding documents and information from Rosario that were necessary to accomplish the targets imposed by Mckercher.

4.24    Mckercher asked Rosario to serve clients with a new truck that did not have proper registration and plate. Rosario refused to perform this illegal and negligent activity, thus creating frictions between Mckercher and him, that ended up in further hostility towards Rosario in the workplace by Loomis and Mckercher.

4.25    Mckercher stated that he rather pay a fine than missing a client stop, in clear violation of the laws of Florida and the general public safety.

4.26    Mckercher constantly and without reason, ridiculed and embarrassed Rosario in meetings in front of his peers, superiors and subordinates, usually questioning his leadership and insulting him.

4.27    On another occasion, in the middle of a meeting in front of all the branch managers, Controller Josh Zawada threw an object to Rosario, who was still healing from the open-heart surgery, because Mckercher asked him to do it.

4.28    On another instance, Mckercher called Rosario an "embarrassment" in a private conversation.

4.29    Rosario approached Mckercher several times to try to stop the bullying in the workplace, but Mckercher responded with phrases such as "I do not care, I will put you in the spot", or "you think that you are a DVP (division vice president) on the making, and fuck it."

4.30    Mckercher called at least one private meeting with Mr. Rosario's reporting managers asking them to talk about Rosario without him being present.

4.31    Mckercher asked Mr. Rosario to check his phone and emails 24/7 or to turn in his "notice", referring to the notice of resignation.

4.32    Mckercher and Loomis purposely threatened Rosario's health by denying Rosario a medical plan from Florida and limiting the opportunities that Rosario had to travel to Puerto Rico.

4.33    When Rosario moved to Tampa, as requested by Loomis, his medical plan coverage was primarily in Puerto Rico, Rosario being a Puerto Rico employee. Because of his medical conditions, Rosario asked Loomis for a new medical plan with coverage based in Florida, petition that was never granted by Loomis.

4.34    Therefore, sometime after Rosario's open-heart surgery, he and Mckercher reached an agreement where Rosario would travel to Puerto Rico monthly to take care of duties related to the Puerto Rico Branch and his private detective license, at the same time he would be able to attend routine follow-up medical appointments, agreement that was later amended so that Rosario would travel once every three (3) months.

4.35    In January 2018, Mckercher unilaterally cancelled said agreement because, according to him, Rosario no longer needed to travel to Puerto Rico. Mckercher's refusal to let Rosario travel to Puerto Rico impaired Rosario's health, denying him the opportunity for follow-up medical appointments.

4.36    Loomis illegally denied Rosario access to the healthcare services he needed to recover from his medical conditions and disabilities, and did not grant reasonable accommodation for Rosario to receive said healthcare services.

4.37    On January 14, 2018, Rosario had to be hospitalized in Florida's Brandon Regional Hospital because of deteriorating health related to his open-heart surgery.

4.38    Loomis deliberately put Rosario's health and live at risk with its discriminatory acts directed to Rosario because of his medical conditions and disabilities.

4.39    These acts drove Rosario to do what any reasonable person would have done to protect his health, family and his life, resign from Loomis, which he did on March 30, 2018 (the "Resignation Date").

4.40    Prior to the Resignation Date, Mckercher had already offered Rosario's job to Richard Conti ("Conti"), Rosario's Operations Manager, by telling him that he was waiting for Rosario's end of employment for the offer to become effective.

4.41    However, Mckercher and Loomis appointed Danielle Harmon ("Harmon"), a white and north American lady, significantly younger than Rosario, to occupy Rosario's job and perform the tasks that were assigned to him, Conti resigning shortly thereafter from Loomis for such reason.

4.42    Two weeks later, Harmon declined the job opportunity.

4.43    Later, Neil Bacon, a white American male, was appointed to perform Rosario's job in Loomis.

4.44    Under Mckercher's supervision, at least three (3) other Puerto Ricans were discharged or forced to resign because of Loomis' and Mckercher's discriminatory treatment towards them.

4.45    At the Resignation Date, Rosario was still a Puerto Rico employee, having signed only one contract of employment with Loomis in 2010 under the laws of Puerto Rico; he paid taxes and filed tax returns in Puerto Rico; Loomis retained a portion of his salary and filed a W-2 Form with the Department of the Treasury of Puerto Rico, pursuant to the laws and regulations of Puerto Rico; his medical plan, provided by Loomis, was based in Puerto Rico, with coverage in Puerto Rico; and the executive functions of Loomis PR were performed by Rosario, who also served (and is still listed as such in the Department of State of Puerto Rico) as Loomis PR's registered agent.

4.46    Therefore, Rosario is protected by Puerto Rico's labor laws.

4.47    After Rosario's forceful resignation, and contrary to the laws and regulations of Puerto Rico, Rosario's private detective license was used by Loomis PR in order to operate within the jurisdiction of Puerto Rico. Without said license, any operation of a securities carrier company, such as Loomis, in Puerto Rico is illegal and is punishable by law.

4.48    After the Resignation Date, Rosario started to receive psychological and psychiatric treatment, being diagnosed with depression due to the hostile working environment that he had to

12

endure, the discrimination he suffered at Loomis and the fact that he had been coerced to resign from his job at Loomis.

4.49    On August 30, 2019, the Equal Employment Opportunity Commission issued a Notice of Right To Sue, which was mailed on September 3, 2019.

4.50    Loomis' actions and omissions constitute a willful violation of ADA, ADEA, Title VII, Act 80 and Act 100, and a callous disregard and deliberate indifference to Rosario's protected rights under federal and local laws.

4.51    This arbitrary, discriminatory and capricious pattern hostility and harassment provoked unnecessary stress, workload, embarrassment, psychological problems and stigma to a top tier employee with recent open-heart surgery, putting his life at risk every single day.

## V.    FIRST CAUSE OF ACTION (Age Discrimination Under ADEA)

5.1    Rosario re-alleges and incorporates the above paragraphs by reference as if fully set forth herein.

5.2    The submission of Rosario to disparate treatment and adverse employment actions by Loomis in whole or substantial part because of his age was in violation of ADEA.

5.3    Rosario has been made to suffer mental, emotional and physical damages, loss of employment and future employment opportunities, and loss of wage and benefits, as the direct result of Loomis' violations.

5.4    As a result of the Loomis' discrimination against Rosario, he is entitled to the rights and remedies at law provided by ADEA, including actual damages, compensatory damages, liquidated damages, and attorney's fees.

5.5    Loomis is liable to Rosario for the back pay he would have been entitled to had he maintained his position. This amounts to approximately to $195,939.08 to October 31,2019, and continue to increase at a rate of no less than $10,312.58 monthly.

5.6    Also, due to the unlawful and discriminatory practices against Rosario, he has had to pay from his own pocket no less than $20,000.00 for medical insurance premiums for which Loomis is liable.

5.7    In addition, Loomis is liable to Rosario under this cause of action for all the salaries and fringe benefits that Rosario has not earned and will not earn in the future because of discriminatory discharge, if reinstatement to the full-time positions is not practical.

## VI.    SECOND CAUSE OF ACTION (Willful Violation Under ADEA)

6.1    Rosario re-alleges and incorporates the above paragraphs by reference as if fully set forth herein.

6.2    Loomis discriminatory practices against Rosario were malicious and/or carried out with reckless indifference to his federally protected right to be free from discrimination and retaliation based on age.

6.3    Loomis' conduct constitutes a willful violation of ADEA, and as a result thereof, Loomis are liable to Rosario for a sum equal to the liquidated damages.

## VII.    THIRD CAUSE OF ACTION (Disability Discrimination Under ADA)

7.1    Rosario re-alleges and incorporates the above paragraphs by reference as if fully set forth herein.

7.2    The submission of Rosario to disparate treatment and adverse employment actions by Loomis in whole or substantial part because of his medical condition and disability was in violation of ADA.

7.3      Rosario has been made to suffer mental, emotional and physical damages, loss of employment and future employment opportunities, and loss of wage and benefits, as the direct result of Loomis' violations.

7.4      As a result of the Loomis' discrimination against Rosario, he is entitled to the rights and remedies at law provided by ADA, including actual damages, compensatory damages, punitive damages, liquidated damages, and attorney's fees.

7.5      Loomis is liable to Rosario for the back pay he would have been entitled to had he maintained his position. This amounts to approximately to $195,939.08 to this date and continue to increase at a rate of no less than $10,312.58 monthly.

7.6      Also, due to the unlawful and discriminatory practices against Rosario, he has had to pay from his own pocket no less than $20,000.00 for medical insurance premiums for which Loomis is liable.

7.7      In addition, Loomis is liable to Rosario under this cause of action for all the salaries and fringe benefits that Rosario has not earned and will not earn in the future because of discriminatory discharge, if reinstatement to the full-time positions is not practical.

**VIII.    FOURTH CAUSE OF ACTION (Willful Violation Under ADA)**

8.1      Rosario re-alleges and incorporates the above paragraphs by reference as if fully set forth herein.

8.2      Loomis discriminatory practices against Rosario were malicious and/or carried out with reckless indifference to his federally protected right to be free from discrimination and retaliation based on his medical condition and disability.

8.3      Loomis' conduct constitutes a willful violation of ADA, and as a result thereof, Loomis are liable to Rosario for a sum equal to the liquidated damages.

## IX.    FIFTH CAUSE OF ACTION (Discrimination Under Title VII)

9.1    Rosario re-alleges and incorporates the above paragraphs by reference as if fully set forth herein.

9.2    The submission of Rosario to disparate treatment and adverse employment actions by Loomis in whole or substantial part because of his color, race and national origin was in violation of Title VII.

9.3    Rosario has been made to suffer mental, emotional and physical damages, loss of employment and future employment opportunities, and loss of wage and benefits, as the direct result of Loomis' violations.

9.4    As a result of the Loomis' discrimination against Rosario, he is entitled to the rights and remedies at law provided by Title VII, including actual damages, compensatory damages, punitive damages, liquidated damages, and attorney's fees.

9.5    Loomis is liable to Rosario for the back pay he would have been entitled to had he maintained his position. This amounts to approximately to $195,939.08 to this date and continue to increase at a rate of no less than $10,312.58 monthly.

9.6    Also, due to the unlawful and discriminatory practices against Rosario, he has had to pay from his own pocket no less than $20,000.00 for medical insurance premiums for which Loomis is liable.

9.7    In addition, Loomis is liable to Rosario under this cause of action for all the salaries and fringe benefits that Rosario has not earned and will not earn in the future because of discriminatory discharge, if reinstatement to the full-time positions is not practical.

## X.     SIXTH CAUSE OF ACTION (Discrimination Under Title VII)

10.1     Rosario re-alleges and incorporates the above paragraphs by reference as if fully set forth herein.

10.2     Loomis discriminatory practices against Rosario were malicious and/or carried out with reckless indifference to his federally protected right to be free from discrimination and retaliation based on his race, color and national origin.

10.3     Loomis' conduct constitutes a willful violation of Title VII, and as a result thereof, Loomis are liable to Rosario for a sum equal to the liquidated damages.

## XI.     SEVENTH CAUSE OF ACTION (Discrimination Under Act 100)

11.1     Rosario re-alleges and incorporates the above paragraphs by reference as if fully set forth herein.

11.2     The hostile work environment caused by Loomis' discriminatory practices and the unjustified discharge of Rosario, in the modality constructive discharge, is actionable under Act 100.

11.3     Rosario was discriminated against by Loomis because of his age, medical condition, race, origin and color of skin, being deprived of the benefits, and salary to which he was and is entitled.

11.4     As an adequate result thereof, defendants are jointly liable to Rosario for back pay and compensatory damages. The latter includes mental, emotional and physical effects, pain, and other manifestations of stress which have been extensive and have required medical intervention.

11.5     Defendants are jointly liable to Rosario for double back pay, front pay, compensatory damages, together with costs and attorney fees.

17

11.6    Loomis is liable to Rosario under Act 100 for an amount in excess of $1,000,000.00.

## XII.    EIGHTH CAUSE OF ACTION (Unjust Dismissal)

12.1    Rosario re-alleges and incorporates the above paragraphs by reference as if fully set forth herein.

12.2    In the alternative, Loomis created a hostile and discriminatory environment for Rosario that led to an unjustified termination in its modality of constructive discharge.

12.3    Act 80 provides for a payment of statutory separation ("*mesada"*) for unjustified termination, pursuant to a statutory formula, based on compensation and years of service.

12.4    Rosario was Loomis' employee for around nine (9) years.

12.5    Rosario's highest salary of the last three (3) years of employment was of $123,751.00.

12.6    It is estimated that his total compensation package under Act 80 is $69,014.98.

12.7    Pursuant to the statutory formula set forth above, the "mesada" to which Rosario is entitled amounts to $69,014.98 ($30,937.75 corresponding to basic indemnization, plus $38,077.23 corresponding to progressive indemnization).

## XIII.    NINTH CAUSE OF ACTION (Attorney's Fees and Prejudgment Interest)

13.1    Rosario re-alleges and incorporates the above paragraphs by reference as if fully set forth herein.

13.2    Loomis is liable to Rosario for attorney's fees under ADA, ADEA, Title VII, and prejudgment interest pursuant to Rule 54 of the Federal Rules of Civil Procedure.

## XIV.    DEMAND FOR JURY TRIAL

14.1    Rosario hereby demands that all his causes of action be tried before a jury.

**WHEREFORE**, all premises considered, Rosario prays from this Honorable Court the following relief:

1.      Back pay, together with interest, for the period he has been deprived of his salary as an employee of Loomis amounting until present at no less than $195,939.08 and any other amount that accrues until the day of trial.

2.      Lost benefits, both past and future, including but not limited to salaries and wages, medical insurance, vacation and sick leave, disability insurance premiums and others.

3.      Compensatory damages in the amount of no less than $1,000,000.00.

4.      An award for double compensatory damages and back pay pursuant to Puerto Rico Act 100.

5.      Reinstatement to Rosario's position at Loomis or in the alternative, front pay in *lieu* thereof.

6.      An award of liquidated damages equal to twice the back pay and fringe benefits lost by Rosario.

7.      An award of punitive damages for willful violations of the ADA, ADEA and Title VII provisions.

8.      In the alternative, statutory separation pay (*"mesada"*) which is calculated at approximately $69,014.98.

9.      An award of reasonable attorney's fees, together with costs, litigation expenses, and necessary disbursements.

10.     Any other remedies which this court may deem just and proper.

**RESPECTFULLY SUBMITTED**

In San Juan, Puerto Rico this 27th day of November, 2019.

**García & Rivera LLC**
P.O. Box 9022074
San Juan, P.R. 00902-2074
Tel. 787-371-1888

**s/ CARLOS G. GARCÍA MIRANDA**
**USDC-PR 302101**
**E-mail: cgarcia@garciariveralaw.com**

**s/ OSCAR RIVERA DÍAZ**
**USDC-PR 306812**
**E-mail: orivera@garciariveralaw.com**